## THE TRINIDAD.

(District Court, D. Oregon. November 23, 1925.)

1. Salvage ⊕⇒48—Evidence held to show that master of libeled vessel accepted tug's services because of tug master's statement, which was not true.

On libel for salvage service, evidence held to show that master of libeled vessel accepted tug's services because of tug master's statement that tug was sent by vessel's owner, which was not true.

2. Salvage ⊕⇒13—Towage rendered vessel having broken tiller, but in no immediate danger, held not to justify claim for salvage service.

Towage of vessel having broken tiller, but otherwise seaworthy, and in no immediate danger, rendered by tug without consent of vessel's owner, and because its master was misinformed by tugmaster, held not to justify claim for salvage service.

3. Towage ⊕⇒3—Vessel held liable for towage, where owner did not disavow service on being informed thereof.

Where managing officer of owner of vessel, on being informed by radio that tug was assisting vessel, did not disavow services, but allowed it to continue, held that vessel was liable for towage, notwithstanding previous notice that tug's services would not be required.

4. Towage ⊕⇒8—Evidence held to show that agreed rate for services of tug in towing vessel was $250 per day.

Evidence held to show that agreed rate for services of tug in towing vessel was $250 per day, as claimed by owner of vessel, and not $350, as claimed by charterer of tug.

In Admiralty. Libel by the Siletz Navigation Company against the steam schooner Trinidad; the Hammond Lumber Company, claimant. Decree for libelant.

Winter S. Martin, of Seattle, Wash., and Maurice W. Seitz, of Portland, Or., for libelant.

G. C. and A. C. Fulton, of Astoria, Or., for claimant.

Joseph, Haney & Littlefield, and John C. Veatch, all of Portland, Or., and Green & Wold, of Astoria, Or., for crew of tug Douglas.

BEAN, District Judge. This is a libel to recover compensation for salvage services alleged to have been rendered by the tug Douglas to the steamer Trinidad.

The Trinidad is a steam schooner, without wireless apparatus, engaged in the coastwise lumber trade, and is owned and operated by the Hammond Lumber Company, which has offices in Portland and San Francisco. The libelant was, at the time the controversy arose, in the towing business with its principal office at Newport on Yaquina Bay, and had under charter from the owners the tug Douglas.

[1] On Tuesday, October 28, 1924, the Trinidad, while on a voyage from Grays Harbor to San Pedro with a cargo of lumber, encountered a southwest gale some 25 or 30 miles off the Oregon coast and south of Yaquina Bay. During the night of that day one of her stanchions parted, and her deckload shifted slightly. At 1 o'clock on Wednesday afternoon her tiller stock broke, so she was without steerage way, but in all other respects was staunch and seaworthy, and she was in no peril or immediate danger.

About 3 o'clock on the afternoon of Wednesday the steamer Oleum offered her assistance, which was declined. At the request of the master of the Trinidad, however, the Oleum sent a wireless message to the owners of the Trinidad at Portland, stating her condition, and requesting that a tug be sent to her assistance. The Oleum

stood by until word was received from her owners that the request would be complied with, when she proceeded on her way.

The Trinidad was also spoken by the Patrician some time Friday afternoon. The message from the Oleum to the owners of the Trinidad was picked up by the wireless operator of the tug Douglas, then lying at a dock at Yaquina Bay.

Mr. Noon, the manager of the libelant, was in Portland at the time, and was advised of the condition of the Trinidad, and that she was asking for a tug. About 10 o'clock in the evening he telephoned Mr. McLeod, the vice president and manager of the Hammond Lumber Company, and inquired whether he could be of any assistance, and, after some conversation between them, it was agreed that the Douglas should go to the assistance of the Trinidad for a stipulated rate per day for her services. Mr. Noon had some telephonic conversation with the master of the Douglas on the same day, concerning a proper charge to be made for the services of the tug. The Douglas was unable to put to sea on Thursday on account of the condition of the bar at Yaquina. McLeod was advised by Noon of that fact, and thereupon proceeded to make arrangements for another tug, and on Friday morning he called Noon by telephone, and told him that he did not want his tug, as he had arranged with the coast guard Algonquin to go to the assistance of the Trinidad.

Thereafter, and notwithstanding such information, Noon ordered the tug to sea to pick up the Trinidad, without informing its master that the arrangements with McLeod were off.

The Douglas left Yaquina early in the afternoon of Friday, and spoke the Trinidad some time between 8 and 9 o'clock on that evening, and a conversation was had between the masters of the two vessels. There is a conflict in the testimony as to what was said. The master, chief officer, engineer, and other employés of the Trinidad testify that, when the tug approached, the master of the Trinidad asked, among other things, "Who sent you," and the reply from the Douglas was "Your office in Portland," while the evidence on behalf of the tug is that the reply was, "From Portland."

I have carefully read and considered all the testimony in the case, and am clearly of the opinion that the weight of the evidence and the probabilities are with the Trinidad. The master of the Trinidad had an opportunity to obtain assistance from either the Oleum or the Patrician if he had so desired.

He did not ask for such assistance because he considered his vessel was in no peril, and he had been advised that the owners were sending a tug. It is but natural, therefore, that, before taking a line from the Douglas, he would want to know whether she had been sent by his owners, and the answer of the tug, "From your owners in Portland," was such as would naturally be given by it, since it knew of the negotiations for its services, and was not advised that they were off, and that its owner had been notified that its services were not required.

The master of the Trinidad, relying upon the information thus received, took a line from the tug. About 12 o'clock Friday night the Algonquin appeared, stood by until morning, when she attached a line to the stern of the Trinidad, and in charge of the two vessels she proceeded on her way, using her own power, arriving at Astoria about 1 o'clock on the afternoon of Sunday, November 2d.

On the next day, without any demand for payment or settlement, and without giving the owners an opportunity to pay without suit, this libel was filed by the Navigation Company for itself and on behalf of the general owner of the tug, her master, and crew, claiming the sum of $35,000 as salvage. The master and crew were not represented at the trial, and probably have abandoned any claim on their behalf. A receiver has been appointed for the Navigation Company, and apparently the only party interested in this litigation is the general owner of the tug, who was made a colibelant at the trial.

[2] In my judgment this is not a salvage case. The services rendered by the tug were commenced by it against the wish and without the consent of the owners of the Trinidad, and because her master was misinformed as to the true condition of affairs. Neither the Trinidad, her cargo, nor the lives of her crew were in such danger as to justify a salvage service without the consent of her master or owner.

[3, 4] About 9:30 o'clock Saturday morning, McLeod was advised by radio that the Douglas was assisting the Trinidad. He did not disavow the service, but allowed same to continue, and therefore she is liable, I take it, for a towage service. There is no evidence as to the value of such service other than what can be gained from the conversation between McLeod and Noon on Wednesday evening. Their testimony is in conflict. Noon says the rate agreed upon was $350 per day, while McLeod says it was $250.

Noon's conduct in the transaction in-

dicates so plainly that he was attempting to lay the foundation for salvage service without the consent and over the objection of the owners of the Trinidad, and his testimony is in some respects so lacking in that frankness which should characterize a witness, that I am disposed to accept the testimony of McLeod as to the rate agreed upon.

A decree will therefore be entered in favor of the libelant for two days' towage service at the rate of $250 per day, without costs.